Putnam J.
delivered the opinion of the Court. It is contended on the part of the respondent, that the plaintiff does not prove any trust under the statute of 1817, c. 87, because the deeds relied upon are absolute, and the evidence offered is not competent to prove a trust under those deeds, and so the Court has no jurisdiction of the case. But the statute does not require the trust to be created in and by the deed itself. The Court are to hear and determine in equity “ all cases of, trust arising under deeds, wills or in the settlement of estates.” The construction which has been given to the statute of frauds, commonly so called, (29 Car. 2, c. 3, § 7,) will aid in the construction of the statute of 1817, c. 87, giving remedies in equity. By the former statute and section, “ all declarations or creations of trust or confidences of any lands, tenements or hereditaments, shall be manifested and proved by some writing signed by the oarty who is by law enabled to declare such *245 trust, or by his last will in writing, or else they shall be utterly void and of none effect.” That section was adopted in the same words by Prov. St. 4 W. M., c. 3, and re-enacted by St. 1783, c. 37, § 3, in the following words — “ that all grants and assignments, as well as all declarations or creations of trusts or confidences of any lands, tenements or hereditaments, snail be manifested and proved by some writing signed by the party who is by law enabled to grant, assign, or to declare such trust, or by his last will in writing, or else the same shall be utterly void and of no effect: ” which is like the 7th section of 29 Car. 2, adding the words grants and assignments as well as before the words declarations fyc. of trusts, but substantially adopting the clause in the English statute.
We think that the evidence which would legally prove a declaration or creation of a trust under the statute of frauds before cited, would be competent to prove a trust arising under a deed, &c. described in the statute of 1817 before cited, giving remedies in equity. And we have an adjudication upon the point as to the statute of frauds, in the case of Barrell v. Joy, 16 Mass. R. 221. It is there held, that although a conveyance of real estate be absolute and unqualified, “ any declaration in writing made by the grantee or assignee, at any time after the conveyance, is competent proof that the property was to be holden in trust according to the terms of such declaration, within a fair and liberal construction of the statute of frauds.” And the Court adjudged that a pamphlet published by the defendant after the conveyance to him, contained sufficient evidence of an acknowledgment on his part, that the estate which had been conveyed to him in absolute terms, was nevertheless to be held in trust for the purposes set forth in the pamphlet. And that opinion is well warranted by the English cases cited by the counsel for the plaintiff, namely, Ambrose v. Ambrose, 1 P. Wms. 321, and Forster v. Hale, 3 Ves. jun. 696. “ It is not required (said the master of the rolls, in an elaborate opinion) that a trust should be created by writing. The statute does not by any means require that all trusts shall be created only by writing, but that they shall be manifested and proved by writing; plainly meaning, that there should be evidence in writing, proving that there was *246 such a trust.” And the court held accordingly, that a grant, of a lease for a term of years to J. B. and three others, was to be held as to one fourth of the premises by J. B. in trust for himself and the plaintiffs. And that trust was proved by the letters of J. B. written after the grant. The decree was confirmed by the chancellor, in 5 Ves. jun. 315, who said that he perfectly agreed with the master of the rolls in adopting the letter of J. B. as a clear declaration of trust. “ When I say that (said he) I mean, clear evidence in writing, that there was a trust. It is not necessary that it should be a declaration ; but a writing signed by the party, may be evidence of a trust admitted in that writing, signed by him.”
Movan v. Hays, 1 Johns. Ch. Rep. 342 : <c It is sufficient to show, by written evidence under the party’s hand, the existence of the trust.” We think that when it should be so clearly proved, the evidence would be as competent and satisfactory as would be the confession of the respondent in his answer, of the matters charged in the bill.
The statute of 1817 gives the Court authority to try cases of trusts arising under a deed : it is not confined to trusts created by the deed, but the trust may be proved by other writings which refer to the deed. The reference and the proof must be clear, or the absolute terms contained in the deed must take effect.
We proceed to examine the case at bar according to this rule.
The bill of sale from Nathaniel Safford to John Dike, of one sixth of the ship Factor, was given on the 13th of Octo her 1823, and was absolute upon its face. But Dike after-wards, on the 12th of January 1826, gave the following receipt or writing under his own hand. “ Received of Nathaniel Safford a bill of sale of one sixth part of the ship Factor, as security for a note indorsed by me for twelve hundred dollars, and two notes of this date for fifteen hundred dollars. On the three notes being paid I agree to relinquish the said one sixth of the said ship.” It is clear that Dike then held the one sixth part of the ship in trust to apply the proceeds to the payment of the notes and the surplus for the use of Nathaniel, and that this trust arose under the deed or hill of sain *247 of the 13th of October 1823. On the 7th of April 1826, Nathaniel, for value received, drew his order on Dike to pay-over to Haskell the balance which should remain over and above the amount due from Nathaniel to Dike, which order was accepted. It is proved that Dike remained in possession of the sixth part of the Factor, and employed the same until the 24th of September 1827, when the plaintiff and Haskell paid to Dike $ 1700 on account of the debt due from Nathaniel to Dike, by giving two notes to him, viz., one for $ 500, whereon the plaintiff was principal and Haskell was surety, the other for $ 1200, whereon Haskell was principal and the plaintiff was surety ; which notes were discounted at the Exchange Bank. The receipt of those notes by Dike appears by two writings under his hand, bearing date the 24th of September 1827. The residue of Nathaniel’s debt to Dike was received by him by the earnings of the vessel. Dike failed and assigned his property to Merrill and Manning on the 6th of July 1829, excepting the sixth part of the Factor, and stated under his hand and seal, that he held that part of the Factor as collateral security for the payment of the notes due to him from the plaintiff and Haskell. And on the same day Dike conveyed the same to Haskell, and Haskell then signed a writing of the following tenor. “ In consideration that Benjamin Merrill and Robert Manning have caused John Dike to convey to me one sixth part of the ship Factor, I agree to account with and pay over to them any balance of accounts that may on full settlement of all demands, appear to be due from me. And I further agree to take up the two notes of hand now held by the Exchange bank, one made by said Haskell, and the other by John Safford, both amounting to seventeen hundred dollars principal. On the 8th of July 1829, Haskell signed a paper of the following tenor, referring to the note which the plaintiff had signed as principal, and also to the sixth of the Factor. “ I hereby certify, that the note of this date, signed by John Safford and myself, for five hundred dollars, in favor of the Exchange Bank, is for account of one sixth part of the ship factor and her earnings the present voyage, and said note is to be paid by me whenever I realize that amount from the effects of sat'd ship and her earnings.” It is clear, *248 therefore, that Haskell succeeded Dike in the trust, ami held the one sixth of the Factor as collat .ral security for the payment of the notes, which amounted to $ 1700, and was to account for the surplus to the assignees.
And Haskell having deceased, the trust has fallen upon the respondent, the administrator of the estate of Haskell, to apply the proceeds of the one sixth of the Factor accoiving u the trusts upon which the intestate held the same. 1
Whereupon the Court here orders and decrees that the same shall be applied accordingly.[1]

 By Rev. Stat. c. 81, § 8, the equity jurisdiction of this Court is extended to 66 all suits and proceedings for enforcing and regulating the execution of trusts, whether the trusts relate to real or personal estate; ” and to implied as well as express trusts. Wright v. Dame, 22 Pick. 55. See Bryant v. Russell, 23 Pick. 508; Hobart v. Andrews, 21 Pick. 526; Conant v. Kendall, 21 Pick. 36; Law v. Thorndike, 20 Pick. 317; Holland v. Cruft, 20 Pick. 320; Dimmock v Bixby, 20 Pick. 368; First Cong. Society in Raynham v. Trustees &c. in Raynham, 19 Pick. 492; Ayer v. Ayer, 16 Pick. 327; Campbell v Sheldon, 13 Pick. 8.