[S. F. No. 13045. In Bank.—July 16, 1929.]

PETER E. LYNCH, Appellant, v. THOMAS B. LYNCH et al., Respondents.

Bert Schlesinger and John L. McNab for Appellant.

Leo J. McEnerney and Alexander L. O'Grady for Respondents.

LANGDON, J.—Plaintiff has appealed from judgments against him in two actions in which he sought to have set aside certain deeds made by his father, Peter Lynch, now deceased, conveying certain property to his brother, defendant herein.

The record consists of four volumes of typewritten matter, comprising over eighteen hundred pages, and the briefs contain lengthy arguments as to the purport of this evidence. The testimony is conflicting upon every matter of importance to the inquiry here and the trial court has made elaborate findings against plaintiff and, as stated in his opinion, the trial judge made such findings most reluctantly, with his sympathies enlisted for the plaintiff. Under such circumstances, the findings are conclusive here, as we have repeatedly held.

Two separate pieces of property are involved here, one at Twenty-third and Mission Streets, San Francisco, and the other at Tenth and Howard Streets, San Francisco. They will be referred to hereinafter as the Mission and Howard Street properties, respectively. In December, 1913, Margaret Lynch, the mother of plaintiff and the record owner

of the properties in question, executed two deeds, conveying to Peter Lynch, her husband, and Kathryn C. Lynch, her daughter, respectively, an undivided one-half interest in the Mission Street property. In June, 1916, Margaret Lynch conveyed to Peter Lynch the property referred to as the Howard Street property.

On June 20, 1916, Peter Lynch executed and delivered to his sons, Francis I. Lynch and Joseph H. Lynch deeds conveying to each of them a one-quarter interest in the Mission Street property. On June 24, 1916, Peter Lynch executed a deed conveying to his eldest son, Thomas B. Lynch, the Howard Street property, which he, after the death of his mother in 1920, conveyed to his sister, the defendant Kathryn C. Lynch, without valuable consideration.

According to the findings of the trial court, the last illness of Peter Lynch continued intermittently from the eighteenth day of June, 1916, to the date of his death on July 2, 1916, but during that period Peter Lynch was not at all mentally incapacitated from transacting any business or entering into any contracts or unable to understand or comprehend the nature, purpose or effect of any of his business acts. During the period from the nineteenth day of June, 1916, to the date of his death, Peter J. Lynch was up and about his home in his usual and customary manner, and while he left his home and was out of doors on or about the twenty-fourth day of June, 1916, he did not leave the premises whereon his house was situated during said time. During this period, Peter Lynch did not suffer physical or mental pain and was not either physically or mentally incapacitated from entering into any contracts, or from executing any deeds disposing of his property. The findings negative all the allegations of the complaint respecting the weakened mental and physical condition of Peter Lynch shortly prior to his death, and they also determine, adversely to plaintiff, the allegations of his complaint to the effect that the deceased directed deeds of the property to be prepared in a manner to transfer a portion thereof to plaintiff and that an older brother, defendant Thomas B. Lynch, prepared the deeds contrary to instructions and contrary to the intention of the grantor, and that the said Thomas B. Lynch presented said deeds to the grantor and requested that he sign them. On the contrary, it is found that on the twentieth day of June, 1916,

Peter Lynch signed, acknowledged and delivered the deeds involved here, transferring the property to certain of his children, at his own instigation and of his own initiative and volition; that he signed them all in the presence of Margaret Lynch, his wife, Kathryn C. Lynch, his daughter, Thomas B. Lynch, his son, and James F. McCue, a notary public; that each of said deeds was executed and delivered by said Peter Lynch to the grantee named therein in the presence of Margaret Lynch, his wife, Kathryn C. Lynch and Thomas B. Lynch.

It is also found that Peter Lynch neither had nor needed any separate or independent advice with respect to the preparation or execution of said deeds, and acted in all said matters freely and independently and upon and according to his own will and judgment and that all said deeds accord with the intention and wish of Peter Lynch; that Peter Lynch never expressed and never had the intention that all of his five children should share equally in his properties, or that any conveyance of any thereof should be made to Peter E. Lynch; that Peter Lynch, the father, at the time of the execution of said deeds knew and understood the contents thereof, and knew and understood the effect of his act in acknowledging, signing and delivering said deeds, and knew and understood and fully comprehended the nature, purpose and effect of each and all of said deeds at the time of the execution of the same and thereby intended to convey the said property described in said deeds to the respective grantees named therein.

The findings then determine, adversely to plaintiff, the allegations of his complaint to the effect that he was misled by his brothers into believing that he would share in the property after his mother's death and into believing that he was an equal owner with them in said property, but, on the contrary, it is found that plaintiff has known since September, 1916, that his brothers and sisters were the owners of the property in dispute.

It appears that after the death of Peter Lynch, the father, the mother and her five children resided together until the marriage of plaintiff, and thereafter, the other children resided in the family home with their mother until her death, in May, 1920. The oldest brother, Thomas, then transferred the property received by him from his father to his sister

and died before the present action was brought to trial. It appears from the record that there were family reasons to explain the action of the father in not naming the plaintiff herein as grantee in any of these deeds and to explain why the oldest brother did not permit the plaintiff to share in his generosity to his brothers and sisters. Indeed, the trial court found that while Peter Lynch, deceased, had affection for all his five children, by reason of certain conduct of plaintiff, the father had less affection for him than for the other children. It having been found by the trial court that these deeds were executed by Peter Lynch, deceased, when he was the owner of the property, as his voluntary, rational act and deed, this court must sustain them and may not substitute its own ideas of what would have been an equitable division of the family fortune for the ideas of the deceased.

It is also contended that the deed from Peter Lynch to his son Thomas was presumptively fraudulent because a fiduciary relationship existed between them. This contention is destroyed by the findings to the contrary and to the effect that the relationship between the parties was that of the greatest friendship and that Peter Lynch had great confidence in his son, Thomas, but that no business or fiduciary relationship existed between them at the time the father executed the deeds.

The only other point requiring discussion is the contention of the appellant that the conveyance by Margaret Lynch, executed in 1913, to Kathryn C. Lynch, her daughter, conveying a one-half interest in the Mission Street property, was void because the property was at that time community property of Peter and Margaret Lynch. The trial court found "that it is untrue that said property was at any time subsequent to the 8th day of January, 1916, community property of Margaret and Peter Lynch." The record shows several reasons why the property in question was not community property, but we shall not discuss them, because, assuming that it was community property at the time of the execution of the deed from Margaret Lynch to Kathryn C. Lynch and that Peter Lynch did not direct the execution of the deed by his wife, that deed nevertheless vested in Kathryn C. Lynch an undivided one-half interest in the property which purported to be conveyed by the deed, because Margaret Lynch, the grantor, survived Peter Lynch, who

died intestate, and thereby she became vested with a one-half interest in the community property which passed under the deed to Kathryn C. Lynch, as an after-acquired interest.

The judgment in each case is affirmed.

Curtis, J., Seawell, J., Preston, J., Richards, J., and Waste, C. J., concurred.