[Civ. No. 9595. First Appellate District, Division Two.—March 6, 1935.]

WILLIAM R. HENRY, Appellant, v. THE HIBERNIA SAVINGS AND LOAN SOCIETY (a Corporation) et al., Respondents.

Fletcher A. Cutler for Appellant.

Hankins & Hankins for Respondents.

NOURSE, P. J.—In 1899 a savings account was opened at the Hibernia Bank in the name of Annie Henry, which account was added to by both Mrs. Henry and her husband, P. W. Henry, for many years. On November 22, 1928, Annie Henry, who was then over eighty-four and partially blind, and her son, the plaintiff herein, went to the bank and transferred the money in this account—then $1771.88—to a joint tenancy in the names of Annie Henry and William R. Henry. This was done without the knowledge or consent of P. W. Henry. On January 10, 1929, plaintiff deposited $100 to this account and with accrued interest at the time of the trial the account was worth $2,304.96. P. W. Henry and his wife also had $12,000 in a joint tenancy account in a Burlingame bank. Mrs. Henry made her will not mentioning her husband among the legatees and when she died on May 18, 1931, her son, the plaintiff, was appointed executor of her will. As such he brought suit against P. W. Henry and others to recover the $12,000 in the

Burlingame bank and judgment went against him. P. W. Henry died a few months after his wife's death and his daughter, Carrie Stuart, was appointed his administratrix. Plaintiff started this action against the bank and the administratrix to collect the $2,304.96 which was in the joint account of himself and his mother. The trial court found that the money was community property, with the exception of the $100 deposited by plaintiff, and therefore part of the estate of P. W. Henry. Plaintiff appeals on the grounds that there is insufficient evidence to show that the money was community property and that even if it were all of the money should not go to the estate of P. W. Henry.

▇ Appellant contends that the forming of the joint account was done with the knowledge and consent of his father; that he had contributed to the money in the Hibernia Bank at various times prior to the opening of the joint account by giving his mother money with the understanding that she was acting as his banker; that the agreement between husband and wife was that all of the property should be hers as separate property; and that Mr. and Mrs. Henry joined in making Mrs. Henry's will. But respondents argue, and the trial court found, that these contentions are not based on fact. The only evidence concerning the consent and knowledge of the father was that he was in the dining room and Mrs. Henry and the plaintiff were in the kitchen when she made the statement that she was going to form the joint account. The evidence also shows that when P. W. Henry learned of the joint account he was very angry. In spite of the close relation and daily companionship of P. W. Henry and his wife and daughter, no mention was ever made of the fact that Annie Henry was acting as a banker for her son, and it was shown that the father and daughter did not know of the joint account until about one month before Mrs. Henry's death. In answer to appellant's argument that P. W. Henry intended all of the property to be Mrs. Henry's separate property, respondents show that the $12,000 account in the Burlingame bank was in joint tenancy between P. W. Henry and Mrs. Henry. And as to the will, the fact that the husband was not mentioned as a legatee and the fact that all of their property, real and personal, was disposed of seems to indicate that it was only intended to take effect in case the husband predeceased

his wife. In all this we have a conflict of evidence which was resolved against plaintiff and that concludes the controversy here, particularly because the great preponderance of the evidence supports the findings.

The only debatable question raised by appellant is whether the trial court was justified in awarding all the community property to the estate of the husband. The undisputed evidence shows that, aside from the $100 deposit made by appellant and which was awarded to him, the entire account was deposited prior to February 10, 1927, and that $500 thereof was deposited after the effective date of the amendment to section 1401 of the Civil Code in 1923, now section 201 of the Probate Code. All these deposits having been made from the joint earnings of the husband and wife the trial court properly held the moneys to be community property. All that acquired prior to 1923, with the increase thereof represented by the interest paid by the bank, vested in the husband, and that portion the wife did not have power to devise or give away. (*Riley* v. *Gordon*, 137 Cal. App. 311, 314 [30 Pac. (2d) 617].) As to that portion acquired subsequent to 1923 but prior to the 1927 amendment to section 161a of the Civil Code, it is clear that the title also vested in the husband (*McKay* v. *Lauriston*, 204 Cal. 557, 565 [269 Pac. 519]), subject, however, to the wife's testamentary disposition of one-half thereof. These conclusions follow because the amendments of 1923 and 1927 have been held nonretroactive. (*Trimble* v. *Trimble*, 219 Cal. 340, 343 [26 Pac. (2d) 477], and cases there cited.)

To restate the foregoing—none of the community property acquired prior to the 1923 amendment was subject to the testamentary disposition of the wife and the title to none of that acquired prior to the 1927 amendment was vested in her. Hence, when, in 1928, she attempted to make a gift of the entire fund to the appellant, she assumed control over property in which she had no vested interest and in which she did not acquire title by operation of law as was the case in *Lynch* v. *Lynch*, 207 Cal. 582, 586 [279 Pac. 653].

The question of the right of a wife to make a gift of the community personal property during coverture without the husband's consent has not been determined in this state by any case cited to us, but all sound reason would deny the

power. Numerous cases may be cited to the point that a gift of community property by the husband made without the wife's consent is voidable as to the wife's half. (*Trimble* v. *Trimble,* 219 Cal. 340, 344 [26 Pac. (2d) 477]; *Travelers Ins. Co.* v. *Fancher,* 219 Cal. 351, 355 [26 Pac. (2d) 482]; *Beemer* v. *Roher,* 137 Cal. App. 298 [30 Pac. (2d) 549].) All the cases ruling on the point seem to treat the expression "testamentary disposition" found in section 201 of the Probate Code as including gifts *inter vivos,* and none distinguishes between the language of section 172 of the Civil Code relating to community personal property and the language of 172a of the same code relating to community real property.

We are reluctant to make a decision on the rights of the wife to dispose of the community personal property because of the manner in which the point is presented on this appeal. The question of her right to dispose of any part of the community property by gift or will was not put in issue before the trial court. The appellant's whole case was tried on the theory that the fund was the separate property of the wife and that no community interest was involved. In his opening brief the appellant states as the last of six questions involved the following: "6. The trial Court finding the money to be community property may it award the whole thereof to the surviving husband, thereby depriving the wife of her community interest in it?"

In that brief he devotes a single paragraph to this question in which he argues that, under the rule of *Beemer* v. *Roher* (*supra*) "the wife was entitled to one-half of the community property" and that the trial court therefore erred in awarding the whole to the estate of P. W. Henry. In his final brief he argues the point at some length, but upon a statement of facts which we cannot reconcile with the record. Upon the authorities above cited it must be evident that the wife had no power of disposition, either by will or gift, of that portion of the fund acquired before the amendment of 1923, including the profits thereof. This would limit the question presented to the sum of $500, with interest thereon, acquired after that date. With the fund thus limited we are in accord with appellant's argument that Mrs. Henry was entitled to dispose of one-half of that sum by will and that such portion of the fund should be awarded

146

to the executor of her estate unless the gift to appellant is to that extent valid. But we are confronted with the peculiar situation that we are asked as an appellate court to rule upon an issue that was never suggested at the trial, and one involving the rights of the executor who was not made a party to the litigation.

For these reasons the judgment should be reversed for the limited purpose of a retrial of the single issue of the disposition of that portion of the community fund deposited after August 16, 1923, with the interest thereon, but in all other respects the judgment should be affirmed, with costs to respondent. So ordered.

Sturtevant, J., and Spence, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 3, 1935.