[Civ. No. 27642. Second Dist., Div. Four. April 16, 1964.]

NORMA DETLEFS NILSON BRIGGS, Plaintiff and Respondent, v. MARY DETLEFS NILSON, Defendant and Appellant.

McLaughlin & McLaughlin and James A. McLaughlin, Jr., for Defendant and Appellant.

Russell E. Parsons for Plaintiff and Respondent.

KINGSLEY, J.—This is an appeal by defendant Mary Detlefs Nilson from a judgment imposing a constructive trust on certain real property held by her and claimed by plaintiff, Norma Detlefs Nilson Briggs.

Basically, this is a dispute between a mother and daughter concerning the ownership of four parcels of real property.

We state the facts as contended by respondent and as found in her favor by the trial court. The history of the four parcels of property herein involved begins in 1938. John Nilson, the father of the plaintiff and the husband of the defendant, died intestate on November 16, 1938. Probate proceedings were initiated, and defendant was appointed administratrix. In the inventory and appraisement, filed in said estate, and in the first and final account of the administratrix, the lot described in plaintiff's first cause of action was listed as community property and the lots described in plaintiff's second and third causes of action were listed as the separate property of the decedent.

While probate proceedings were pending, defendant was appointed guardian of the person and estate of the plaintiff, who at that time was a minor of 14 years. On August 2, 1938, prior to the filing of said first and final account in the probate proceeding, defendant had executed grant deeds of gift to the aforementioned lots in favor of plaintiff. The decree of distribution vested title in the property in plaintiff.

Subsequent to these probate proceedings, defendant discovered among the effects of the decedent a deed to the lot described in plaintiff's fourth cause of action. Proceedings were then instituted by defendant to redeem the property from a delinquent tax sale, and another final account and petition for final distribution was made in the probate proceedings of the estate of John Nilson. Pursuant to such account and petition the property was distributed one-half to defendant and one-half to plaintiff as tenants in common.

During the minority of plaintiff, defendant managed the property for plaintiff. This management continued in the same manner after plaintiff reached her majority. In 1949,

plaintiff, then being 25 years of age, informed defendant that she was contemplating marriage. Defendant became very upset and induced plaintiff to execute joint tenancy deeds, covering the properties described in plaintiff's first three causes of action, in favor of plaintiff and defendant as joint tenants. No revenue stamps appear on these deeds. As to the property described in plaintiff's fourth cause of action, a different procedure was followed. Plaintiff executed a quitclaim deed of her interest in the property to defendant. Defendant then executed a joint tenancy deed conveying said property to herself and plaintiff as joint tenants. Plaintiff testified that these conveyances were made with the understanding that defendant would reconvey the properties to her whenever requested to do so.

In 1959, plaintiff and defendant had a severe falling out. Plaintiff demanded a reconveyance of the properties to her, which was refused. To enforce her alleged rights to these properties, plaintiff filed suit against defendant in December of 1960. By this action plaintiff sought to quiet title to the entire fee interest in three parcels of real property (described in the first three causes of action), and a one-half interest in the property described in the fourth cause of action. In her fifth cause of action plaintiff sought to have defendant declared to be a trustee of the properties described in the first four causes of action. The sixth cause of action sounds in declaratory relief and involves the same property described in the previous causes of action. The seventh cause of action asks for an accounting in full from the time defendant acquired the properties until the present time.

I

On appeal defendant urges that the statute of frauds and the parol evidence rule preclude the establishment of a constructive trust in plaintiff's favor. The contention is without merit.

While it is true that the statute of frauds forbids the creation of an express trust in real property by verbal declaration of the owner (Civ. Code, § 852; *Kingsley* v. *Carroll* (1951) 106 Cal.App.2d 358 [234 P.2d 1039]), section 2224 of the Civil Code, in part, provides: ''One who gains a thing by fraud ... is ... an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it.'' Either actual fraud which induced the conveyance, or constructive fraud issuing from breach of the oral promise by the promisor who is in a confidential relationship with the

promisee will bring the terms of the section into operation. (*Orella* v. *Johnson* (1952) 38 Cal.2d 693 [242 P.2d 5]; *Huber* v. *Huber* (1946) 27 Cal.2d 784 [167 P.2d 708]; *Steinberger* v. *Steinberger* (1943) 60 Cal.App.2d 116 [140 P.2d 31]; *Robertson* v. *Summeril* (1940) 39 Cal.App.2d 62 [102 P.2d 347].)

 Although the mere existence of the relationship of parent and child does not per se establish a confidential relationship (*McMurray* v. *Sivertsen* (1938) 28 Cal.App.2d 541 [83 P.2d 48]), this factor, when taken together with some other factors, may warrant such a conclusion. (*Lynch* v. *Lynch* (1929) 207 Cal. 582 [279 P. 653].) It cannot be questioned that a confidential relationship existed between the parties up to 1959. The evidence, without contradiction, shows that plaintiff was at all times an obedient, dutiful and loving daughter, yielding to and complying with her mother's wishes and demands; that she was under the domination and control of her mother; that she left the handling of the properties in question to her mother; that defendant managed the properties and made out the income tax returns for plaintiff; that plaintiff signed (often without reading) any documents presented to her for her signature, including leases, deeds to property, either in blank or filled in, blank checks, stock powers and powers of attorney.

 Nor is the parol evidence rule a bar to plaintiff's action. This is not an action to enforce the express oral trust, but an action to enforce a constructive trust which arises by operation of law upon the repudiation of the promise to reconvey. (*Steinberger* v. *Steinberger, supra* (1943) 60 Cal. App.2d 116, 119.) As such the statute of frauds has no application where a constructive trust is imposed. (*Edwards* v. *Edwards* (1949) 90 Cal.App.2d 33 [202 P.2d 589].) Furthermore, the same result would follow even if we disregard the confidential relationship. It is the general rule, supported by numerous authorities in California, that where property is conveyed without consideration to one who actually promises to reconvey to the grantor, the grantee may be compelled to make specific restitution. (*Orella* v. *Johnson, supra* (1952) 38 Cal.2d 693, 697-698.)

## II

Defendant further argues that plaintiff's first, second, third, fourth, and sixth causes of action are barred by the statute of limitations, because plaintiff's causes of action, if any, first arose in 1949 when she conveyed the properties to

her mother. In support of this contention, defendant cites the case of *Leeper* v. *Beltrami* (1959) 53 Cal.2d 195 [1 Cal.Rptr. 12, 347 P.2d 12, 77 A.L.R.2d 803]. That case, however, is inapplicable to the case at bar. This is not an action to set aside deeds obtained by fraud or duress since there is no contention on the part of the plaintiff that defendant practiced either fraud or duress upon her at the time the conveyances were made.

In cases of constructive trust, a cause of action does not arise until the transferee repudiates the oral promise or dies. (*Svistunoff* v. *Svistunoff* (1949) 94 Cal.App.2d 651, 653 [211 P.2d 352].) Although the evidence is in conflict, the trial court was adequately justified in finding that the first positive refusal by defendant to reconvey occurred in August or September of 1959. The action was filed in December of 1960, thus the evidence supports a finding that this action was timely. (*Taylor* v. *Morris* (1912) 163 Cal. 717 [127 P. 66].)

### III

Defendant also argues that judgment should have been in her favor on the third and fourth causes of action by reason of the doctrine of adverse possession. We find this contention untenable. When one is holding as a trustee there can be no adverse possession until the trustee repudiates the trust. (*Svistunoff* v. *Svistunoff, supra* (1949) 94 Cal.App.2d 651.) The repudiation of the trust occurred in 1959. Plaintiff's action was filed in 1960—well within the period of the statute of limitations for adverse possession.

### IV

Finally, defendant argues that the conveyance of the properties to her by plaintiff were supported by a good and valuable consideration and, in the absence of some extenuating circumstances, a constructive trust will not be imposed. (*Kingsley* v. *Carroll, supra* (1951) 106 Cal.App.2d 358.)

Defendant contends that the consideration for the conveyance was her consent to plaintiff's marriage, and her payment for the costs of the wedding. Undoubtedly this would have been good consideration to support a contract. However, before such consideration can support a contract, it must be bargained for and given in return for a promise or an act. (*Simmons* v. *California Institute of Technology* (1949) 34 Cal.2d 264 [209 P.2d 581].)

Here, the evidence supports a finding that the con-

veyances were not made in consideration of defendant's giving her consent to the marriage, plus the payment of wedding expenses; but were made in order that plaintiff's husband-to-be would not be able to get control of these properties. This view is strengthened by the fact that defendant induced plaintiff to execute a will leaving all of her separate property to her, if plaintiff died without having any children, and also induced plaintiff to execute an antenuptial agreement with her husband-to-be. Since the evidence supports the finding adverse to appellant, it is binding on her and on us.

## V

While plaintiff seeks an affirmation of the judgment below, she urges in one particular that the judgment should be modified so that defendant should be required to account for any income on the properties belonging to plaintiff from the date of defendant's repudiation of the trust.

In her seventh cause of action plaintiff asks for an accounting in full ''... from the time of acquirement of said properties to the present time, showing in detail all of the receipts and income from said properties, and any and all proper disbursements made in connection with the operation of said properties, and this plaintiff stands ready to pay her fair share of the costs and proper disbursements made in connection with the handling of said properties.''

In a memorandum decision, the trial court was of the opinion that: ''I do not think she [Norma] is entitled to an accounting. It must be remembered that we are dealing here with a mother and daughter who had an extremely close relationship until the incident of July 20, 1959. The evidence indicates that the income and expenses with respect to these properties were never handled by Mary and Norma in accordance with the ownership and title. Both before and after the 1949 conveyances, Norma received all the rentals and paid all the expenses on Lot 8; Mary similarly received all the rentals and paid all the expenses on Lot 296; they shared the income and expenses on Lot 14; Lot 109 is unimproved and produced no income....

''Norma became 21 years of age on August 14, 1945, and must be deemed to have thereafter assented to this division of income and expenses. Since the parties have voluntarily followed this method for some 15 years, it be [sic] neither feasible nor equitable at this late date for the court at the request of one party, to disregard their agreed method.''

This opinion was carried forward in the Findings of Fact, as Finding of Fact XVI. We see no error in this finding.

On this appeal, plaintiff seeks an accounting only from the date of repudiation. As thus limited, it is clear that the rationale of the trial court's decision is not applicable. Were the point properly before us, we would regard it with favor. But plaintiff did not cross-appeal. A respondent who does not cross-appeal is bound by the judgment as it was entered and cannot seek its reversal or modification. (3 Witkin, Cal. Procedure, Appeal, § 72, p. 2229.)

The judgment appealed from is affirmed.

Burke, P. J., and Jefferson, J., concurred.